Slingerland v. Binns.

David H. Slingerland, appellant,

v.

Henry Binns et al., respondents.

[Filed February 28th, 1898.]

Under the fifth section of the supplement to the Mechanics' Lien law, approved March 14th, 1895 (*Gen. Stat. p. 2073*), workmen and materialmen, creditors of the builder, who serve notices upon the owner in accordance with the statute, thereby secure, with respect to any moneys thereafter growing due upon the contract according to its terms, a right to payment in preference to the right of persons to whom the contractor had assigned such moneys before the notices were served.

On appeal from a decree advised by Vice-Chancellor Pitney, whose opinion is reported in *Binns* v. *Slingerland, 10 Dick. Ch. Rep. 55*.

*Mr. William W. Watson*, for the appellant.

*Mr. John B. Humphreys*, for the respondents.

The opinion of the court was delivered by

Dixon, J.

On April 6th, 1895, the complainants entered into a written contract with Ebenezer Scott, by which Scott agreed to erect for them a building in the city of Passaic for $3,900. This contract, with the specifications, was duly filed in the Passaic county clerk's office. Afterwards Scott bought from the defendant

materials, which he used in the construction of the building, for which he owed the defendant $450; and on September 12th, 1895, the defendant, having demanded payment from Scott, served on the complainants a notice thereof in accordance with the provisions of the Mechanics' Lien law. At that time all moneys accruing under the contract were past due and paid, except the last installment, $1,400, which was payable on the completion of the building, and had not yet matured. Scott failed to complete the building, and the complainants, therefore, finished it at an expense of $235.25. Besides this, they paid $500.37, for which they claim credit on account of the $1,400. Conceding all these credits, there would have become due to Scott for his final payment a balance of $664.38, on the completion of the building, had he not previously given to various persons orders on the complainants amounting to $690.86, which the complainants had paid. The complainants refused to pay the defendant's demand, and thereupon he sued them at law, and recovered judgment in spite of their contention that Scott's orders, having been given before the defendant's notice was served, were, as equitable assignments *pro tanto* of the fund, entitled to priority over the defendant's claim.

The present bill was filed to restrain the defendant from enforcing his judgment, on the ground that, although the complainants' defence was overruled at law, it should be sustained in equity. On this bill the complainants obtained a decree in their favor, and thereupon the defendant appeals to this court.

Conceding that the contention of the complainants would have prevailed before the passage of the supplement to the Mechanics' Lien law, approved March 14th, 1895 (*Gen. Stat. p. 2073*), the question now turns on the proper construction of the fifth section of that supplement, which is as follows :

"That if the owner or owners of any building or other property, which, by the act to which this is a supplement, or the various supplements and amendments thereto, is made the subject of liens for or toward the construction, altering, repair or improvement of which labor or services have been performed, or material furnished by contract, duly filed, shall, for the purpose of avoiding the provisions of the act to which this is a supplement, or the various supplements and amendments thereto, *or in advance of the terms of such*

*contract*, pay any money or other valuable thing on such contract, and the amount still due to the contractor after such payment has been made, shall be insufficient to satisfy the notices served in conformity with the provisions of the act to which this is a supplement, or the various supplements or amendments thereto, such owner or owners shall be liable in the same manner as if no such payment had been made."

Prior to that supplement this court had held that the contractor in a building contract was free to deal with his inchoate rights under the contract as he pleased, up to the moment when they were impounded by a notice given to the owner pursuant to the statute, and if, before the notice reached the owner, the contractor had assigned his rights, the notice was ineffectual. *Craig* v. *Smith, 8 Vr. 549; Mayer* v. *Mutchler, 21 Vr. 162.* The basis of these decisions was that the statute gave the workmen and materialmen no claim whatever upon the moneys payable under the contract or upon the owner, until the statutory notice was served.

But plainly this section of the law changes the situation. It expressly forbids the owner to pay any money in advance of the terms of the contract, if the effect may be that the amount unpaid will prove insufficient to satisfy notices served in conformity with the statute. The prohibition is not confined to payments made to the contractor personally; it embraces payments made to anyone. In substance it directs that the owner shall not in any way discharge his liability to pay under the contract, until, according to the terms of the contract, the time to do so has arrived, in order that until that time such liability may be preserved for the benefit of workmen and materialmen who serve the statutory notice. This enactment, we think, affords a reasonably clear indication of a legislative purpose to give to persons entitled to serve the statutory notice an inchoate lien upon the liability of the owner under the contract, until that liability matures, according to the terms of the contract, such lien to become perfect on service of the notice before the liability matures, but to expire on such maturity if no notice has been given; for a notice served after maturity derives no aid from this provision. Of course, this inchoate lien does not impair the owner's right to protect himself against the consequences of any default upon

Slingerland v. Binns.

the part of the contractor, but it does prevent the contractor from making any disposition of his rights, detrimental to the claims of those serving notice according to the act.

These views are supported by decisions on similar statutes elsewhere, although, the statutes being somewhat different, the decisions may not be exactly in point. *Post* v. *Campbell, 83 N. Y. 279; Jorda* v. *Gobet, 5 La. Ann. 431; First National Bank* v. *Perris District, 107 Cal. 55.*

On this construction of the statute, the rights of Scott's assignees were subordinate to the rights of the defendant, and the complainants could not, by paying those assignees, lessen their liability, either at law or in equity, to the defendant.

The suggestion made against the constitutionality of the statute, if it has any substance, should have been presented in the trial at law.

The decree should be reversed, and the bill dismissed.

GUMMERE, J. (dissenting).

I am unable to concur in the view, expressed in the opinion of the majority of the court, of the effect to be given to the fifth section of the supplement to the Mechanics' Lien law, approved March 14th, 1895. In my judgment that section was correctly construed by Vice-Chancellor Pitney, in his opinion delivered in the court of chancery in this case. *10 Dick. Ch. Rep. 55.* For the reasons stated in that opinion I vote to affirm the decree appealed from.

I am authorized to state that Justices Depue and Ludlow, and Judges Adams and Krueger, also vote to affirm the decree for the reasons stated in the vice-chancellor's opinion.

VREDENBURGH, J. (dissenting).

This controversy relates to rival equities, founded on claims for materials furnished in the erection of a building by contract, asserting precedence, as between themselves, out of the contract money owing from the owners to the contractor, such money being insufficient to satisfy all the claims against it.

The case was heard in the court of chancery upon bill and

answer, and the decree appealed from restrains appellant from enforcing his judgment at law against the owners, which judgment they insist is without equitable support if they are entitled to certain credits against the last payment of $1,400 of the $3,900 of money payable by them under the contract.

The facts material for the present purpose are these: On April 6th, 1895, a written contract for the erection of a building in the city of Passaic was made between the owners (the respondents) and the contractor, and was duly filed in the clerk's office, containing the following clause:

"Should the contractor at any time during the progress of said works refuse or neglect to supply a sufficiency of materials or workmen, the owner shall have power to provide materials and workmen, after three days' notice in writing being given, to finish the said works, and the expenses shall be deducted from the amount of said contract."

The contractor neglected to supply a sufficiency of materials, and the owners, having given him the three days' notice in writing contemplated, incurred, in July, 1895, debts for lumber of $243.27, procured by them to finish the works. Debts, also, for other lumber and materials for $615.86 were incurred in the erection of the building (the bill inadvertently omits to state the circumstances and the dates when or by whom), for which written orders were drawn by the contractor and presented to the owners prior to the service upon them by the appellant of his "stop notice." Subsequently, on September 12th, 1895, the appellant, who had furnished tin and plumbing materials for the building at request of the contractor, served a "stop" notice upon the owners under the third (now the thirty-eighth) section of the Mechanics' Lien law, and on May 26th, 1896, obtained judgment in the Passaic circuit court for a balance of the amount so demanded against the owners. The materials constituting the debt of $243.27 which were purchased by the owners, were delivered at the works with the knowledge and sanction of the contractor. The owners paid the debt (so previously incurred by them) on December 7th, 1895, to the American Lumber Company, and claim the right to deduct such amount as a credit or expenditure authorized by the contract. They have, also, since September 12th, 1895, paid

the said orders for $615.86, previously drawn upon them as above stated, and claim a like credit for such expenditure; and have filed· their bill of complaint in the court of chancery to enforce preference for these several payments against this contract money in their hands, and to that end to restrain the appellant from prosecuting his judgment at law against them. While the bill of complaint is not technically one for the specific performance of a contract, I think that it may be so regarded, and that the respondents are entitled to the specific relief they ask against this judgment, as well as to the decree, under their general prayer for relief, declaring that the contract money has been fully paid, and that the contract should be delivered up to be canceled.

The question now to be considered, it seems to me, is, whether the respondents, having exercised their right, under the above-quoted clause of the contract "to provide materials, &c., to finish said works" after the contractor's default therein, and having incurred debts, and also expended money upon the contractor's orders for that purpose, have, notwithstanding the provisions of the fifth section of the supplement to the Mechanics' Lien law (hereinafter quoted), established an equity to be credited therefor upon said contract.

While the practical effect of such credits is to exhaust the fund payable by the owners under this contract, and to discharge them from further liability thereunder, as well as from appellant's judgment, yet I think that such result, where no fraud or collusion is charged, is their just protection under the contract, and does no violence to the intent of said fifth section.

It will be observed that the exercise by the owners of their contractual right of supplying the materials necessary to complete the building, worked a distinct benefit to the appellant, as well as to other materialmen, in this, that it secured to the owners, who were responsible for the contract money, a finished and valuable building, instead of a worthless ruin; for instance, the tin and plumbing materials placed in the works by the appellant would be valueless if the lumber put there by the respondents was wanting. So that even if we regard the question from the

appellant's standpoint alone, the ultimate payment of his claim out of the contract money might depend upon the feature of the contract which enabled the owners to come to the rescue of an insolvent contractor, and supply the money and credit necessary to complete the building. The falling walls of an unfinished structure, exposed to the storms and winds and the elements, could easily drag down the financial credit and ability of its owners to destruction with it.

Now it is obvious that the exercise of this measure of self-protection by the owners worked neither hardship nor surprise to the appellant. On the contrary, his own "stop notice" was grounded upon the fact of the publicly-filed contract itself, and he is therefore charged in law with not only constructive notice but also with actual knowledge of all its terms. His materials were furnished with full notice of this precaution taken by the owners to enable them to rescue their property and save themselves from the neglect of the contractor when the crisis should arise which would justify such action on their part.

The most cursory examination of the third (now the thirty-eighth) section of the Lien law cannot fail, I think, to show that the whole scope of that section is to place the unpaid material-men, who serve notices under its terms, upon the same footing as the contractor; certainly upon no higher standing. It simply authorizes the owners to "retain" from amounts of money either "owing" or "that may thereafter become due from them" on the contract, such amounts as they are satisfied are, correctly, still due from and unpaid by the contractor to the materialmen serving such notices. Their rights under this section are in all respects subordinate to those of the parties to that contract. If we need the suggestions of authority on this subject, the cases of *Craig* v. *Smith, 8 Vr. 549,* decided by this court, and of *Kirtland* v. *Moore, 13 Stew. Eq. 110,* are sufficient. In the last case the pointed language of Vice-Chancellor Van Fleet is as follows: "Upon notice given, the workman or materialman, to the extent of his demand, takes the place of the contractor. But if, when the notice is served on the owner, there is nothing owing to the contractor, and he is without right against the owners, the notice is without legal effect."

" The test is, whether a suit for the money demanded will lie by the contractor against the owner; if it will not, the owner is not liable to a suit by the materialmen."

If the matter rested here it must be plain that the owners had the clear contractual right, and, of course, the superior equity, to preference for such expenditures upon their contract. But it is insisted by the appellant that the fifth section of the supplement of March 14th, 1895, to the Mechanics' Lien law (*Gen. Stat.* § *2073*), denies to the owners any preference for money so expended, and makes them " liable in the same manner as if no such payment had been made."

If this be the correct interpretation of the intent of that enactment, as applicable to the present contract, it will certainly demonstrate the futility of any effort by owners in their filed contracts (which are notices to all interested) to protect themselves, and all those having valuable interests at stake, from the disaster of an unfinished erection thrown suddenly upon their hands by insolvent contractors.

It seems to me that such a construction is not warranted by its terms. That section, in its material parts, reads thus :

"That if any owners for the purpose of avoiding the provisions of the [lien] act, or in advance of the terms of such contract, pay any money on such contract, and the amount still due to the contractor, after such payment has been made, shall be insufficient to satisfy the notices served in conformity with the provisions of the [lien] act, such owners shall be liable in the same manner as if no such payment had been made."

In the first place, the purpose of the owners in their efforts to complete the building, and their action in the purchase of materials and the payment of the contractor's orders to that end, exercised in strict conformity to the contract, should not be construed to be a " purpose " to avoid the provisions of the lien law. In a certain sense, the making of all building contracts which avoid, as they all certainly do, when made and filed, except as to the contractor alone, the provisions of the first section of the lien law, is subject to the same condemnation ; a purpose to avoid the statute will not be ascribed by any court of equity to owners endeavoring only to avoid a financial loss, and acting in compliance with the very terms of their contract.   I

Slingerland v. Binns.

think we are justified in assuming, in the absence of any charge of fraud or collusion, that their only purpose in making such payments was to complete the building, and thus to effectuate, not to avoid, the provisions of the Lien law. It is unnecessary to pursue this point further.

In the next place, the act of the owners in incurring and paying said debts, and orders to provide sufficient materials to finish the works, as well as in the payment to materialmen of the orders in question, was not either literally or in effect a payment "in advance" of the terms of the contract—*i. e.*, a payment contrary to the terms of the contract. Nor was it a payment on the contract at all in the sense used in the fifth section. It was a disbursement, authorized by the terms of the contract in case of default of the contractor, made to third persons holding equities adverse to the contractor, not a payment to or favoring the contractor. The section in the New York law, upon this head, uses the word "collusion," showing the evils against which the law in that state was leveled. But there is no pretence of collusion in the present case. The contractor received nothing and was entitled to no payment, because he had broken his contract and had disentitled himself to any payment. The whole of the contract must be read together; the contractor, by his neglect to finish the works, had no legal right to demand of the owners the payment of the $1,400 (which was covenanted to be paid him only on condition that he performed the work), nor any part of it as such. There was, in fact, no payment made by the owners to the contractor of this $1,400, or any part of it, either in advance of the terms of the contract or at any time, and therefore the statute does not come into operation. If it be claimed that, in the contemplation of this statute in a court of equity, those payments by the owners to third parties—made necessary by the contractor's breach of his contract—were payments to the contractor, such claim disregards the facts of the whole transaction and seems to me to be unwarranted. There could exist no basis for such a claim, without the charge of fraud or collusion, and no such charge has been made anywhere in the case.

Again, the words "pay" and "payments" are used in this

section in their usual signification, and refer only to an extinguishment of a previous indebtedness owing from the debtor to the payee. But in the case in hand, the owners owed no debt to the contractor (the payee intended by the law), by force of the contract, for the materials in question.

Unless the above reasoning is at fault, the advance payments, intended to be forbidden by this section, apply only and strictly to the payments due from owners to a contractor by reason of the performance of his contract, and not to payments of debts due from the owners to third persons for liabilities incurred by them because of the non-performance of the contract by the contractor.

The equity of respondents to apply, as a credit upon the contract price, the expenses incurred or assumed by them for materials supplied by them, by whatever methods they deemed effective, to the works neglected by the contractor, rests securely upon their contractual rights as owners against the defaulting contractor, which rights, I think, are unimpaired and unaffected by the statute in question.

The argument then becomes narrowed to this point, viz., after the failure of the contractor to perform his contract, the $1,400 payment, which would otherwise have become due him, or to those serving stop notices under him, never could become due except by the waiver by the owners of the performance of the contract. The juncture of a payment "in advance of the terms of the contract," referred to in section five, therefore never arose in this case, because the owners were absolved from such payment unless there was a waiver by them of their right to performance by the contractor, and none is pretended. It follows that the payments by the owners of the $243.27 and of the $615.86 incurred and assumed by them to the materialmen, were not payments "in advance of the terms of the contract," but were simply their own expenditures to complete the building, and for which, in an accounting with the contractor on a *quantum meruit*, they would be entitled to credit against any claim by him, or of the appellant under him, for any part of said $1,400.

I have endeavored to present additional support for the equitable conclusion of the court below, and to show, from the peculiar

contractual relations of the parties, reasons why the equities of these owners in this case rise beyond the reach of the enactment in question, but it is not intended in what has gone before to overlook the importance of the reasoning in the opinion below, supported by cases there cited. These clearly show that the drawing of those written orders operated as equitable assignments, according to their extent, of any payment, and that the owners by their diligence thereby acquired a priority, as being "first in time and therefore prior in right," over the claims of the appellant. The drawing and presentation of those orders placed the drawees in a position to enforce such payment in a court of equity out of any unpaid money which might become due. The rights of third persons which had become superior to those claiming under the contractor, had therefore supervened, and the owners in paying them afterwards were yielding to their equitable obligations, and their payment of them was wholly involuntary.

Notwithstanding this, the true equity of the owners in making such payment rests, in my view of the facts and the statute, entirely upon the above-quoted clause of the contract and of the action of the owners in good faith thereunder, and because of that view, this opinion has been written.

These owners are entitled to their preference, as against the defendants, to retain the contract money, by force of the terms of the same contract which, admittedly, also binds the defendants, and the only question is whether the statute (quoted) deprives the owners of this contractual preference. The statute only touches owners who violate its provisions by making payments of money, in advance of the terms of the contract, which would, but for such wrongful payments, be available for those claiming by notice under the contract, not those owners who, instead of violating, strictly perform the contract according to its terms and apply the contract money to finish the building.

This controversy, in its form at law, was submitted to the Passaic circuit court upon an agreed statement of facts, which a subsequent stipulation between the solicitors, in its present form, has enlarged, and from which and the statements of the bill, as admitted by the answer, it sufficiently appears that the respond-

ents were denied the right to present to the law court the defence of the payment of said orders on the ground that it was purely an equitable defence. The respondents acquiesced in that ruling, and then resorted to a court of equity to obtain relief, but if their decree be now reversed, will be denied it in both jurisdictions.

Under the submission incorporated in the bill of complaint, and the circumstances in which the jurisdiction of this court has intervened, I think the respondents should have been allowed the benefit of the feature of their contract above set forth, even though such claim could also have been made available at law, if it had been insisted upon against the ruling of the circuit court. Therefore, and at this late day, the parties should not be turned around.

I think the decree below should be affirmed.

*For reversal*—THE CHIEF-JUSTICE, COLLINS, DIXON, GARRISON, LIPPINCOTT, VAN SYCKEL, BOGERT, HENDRICKSON, NIXON—9.

*For affirmance*—DEPUE, GUMMERE, LUDLOW, ADAMS, KRUEGER, VREDENBURGH—6.