GEORGE J. TAYLOR v. JOSEPH REED.

Submitted March 20, 1902—Decided June 9, 1902.

1. Under sections 3 and 5 of the Mechanics' Lien law (*Pamph. L.* 1898, *p.* 538), a claimant who serves his stop notice after the maturity of the final payment due from the owner to the contractor, is entitled simply to stand in the shoes of the contractor and recover from the owner any moneys then due from the owner to the contractor to the extent of the claimant's demand.

2. Under sections 3 and 5 of the Mechanics' Lien law (*Pamph. L.* 1898, *p.* 538), a claimant who serves his stop notice after the owner's liability to the contractor has matured, is not entitled to any benefit of the provisions contained in section 5 with respect to payments made by the owner to the contractor in advance of the terms of the contract. His rights are subject to payments previously made by the owner to the contractor, stop notices previously served, and other prior assignments, without regard to the time when or the order in which such prior payments or assignments were made or stop notices served.

On *certiorari* to First District Court of Jersey City.

Before Justices FORT, HENDRICKSON and PITNEY.

For the plaintiff, *Robert Carey.*

For the defendant, *Hartshorne, Insley & Leake.*

The opinion of the court was delivered by

PITNEY, J. This action is founded upon a stop notice given to the owner of a building by a creditor of the building contractor, under the provisions of the Mechanics' Lien law. The plaintiff had judgment in the trial court.

The building contract in question was filed April 5th, 1898. At that time the provisions of the supplement of 1895 to the revised Mechanics' Lien act of 1874 were in force (*Pamph. L.* 1895, *p.* 313; *Gen. Stat., p.* 2073), but the moneys claimed by the plaintiff became due to him, and his stop notice and the other stop notices in question were served, all after the date when the revised Mechanics' Lien law of 1898 and the accompanying repealer of previous legislation on the subject took effect. *Pamph. L.* 1898, *pp.* 538, 553. The pertinent provisions of the act of 1895 are substantially embodied in the revision of 1898 as sections 3 and 5, and the difference in phraseology has no bearing upon the question in controversy in this case. It is therefore unnecessary to consider whether the act of 1895 or the act of 1898 applies, and for the purposes of the present discussion the act of 1898 will be treated as applicable.

The material facts are as follows: The building in question was erected by contract, in writing, made between the defendant, Reed, as owner, and the firm of Krause Brothers, providing for its construction by that firm under the direction of an architect, and to his satisfaction, to be testified by his written certificate. The contract price for the construction of the building was to be paid in installments of 'which the final one was $1,500, to be paid when the building should be completed, provided a certificate to that effect should be signed by the architect. Under employment from Krause Brothers, the plaintiff did certain electrical work, which was a part of the work required to be done by them under the Reed-Krause contract. Reed appears to have duly paid to Krause Brothers,

prior to September 28th, 1898, all moneys called for by the contract, except the final payment of $1,500. On that date the architect delivered to Krause Brothers a certificate to the effect that they had completed their work in accordance with the plans and specifications and were "entitled to the final payment of $1,500 as per contract, reserving, however, the sum of $500 to be retained for one month." Upon the strength of that certificate Reed paid to Krause Brothers $1,000 on September 28th. The building was not, in fact, finished until October 17th, on which day the architect delivered to Krause Brothers a certificate that they were entitled to the final payment of $500, as per contract.

Taylor, the plaintiff, completed his work on October 1st. Successive stop notices were served upon Reed, the owner, as follows: The first notice was by one Zetton for $105, and was served October 8th, 1898; the next was by the Dodge & Bliss Company for $1,157.52, served October 12th, and on October 21st the plaintiff, Taylor, served a stop notice for the sum of $75.

These several notices were founded upon demands which were, in fact, justly due and owing from Krause Brothers to the respective claimants for work done and materials furnished to Krause Brothers in and about the erection and construction of the building, in order to enable them to perform their contract with Reed. The controversy relates to the legal force and effect of Taylor's stop notice, in view of the fact that before its receipt the defendant had paid to Krause Brothers the whole of the final payment excepting $500, and had received stop notices prior to that of Taylor, more than sufficient to exhaust the $500.

The trial court having found that the building was not, in fact, finished until October 17th, it would seem to follow that the payment of $1,000 made on September 28th was made "in advance of the terms of the contract," within the meaning of section 5 of the Mechanics' Lien law, notwithstanding it was made upon an architect's certificate. As the contract called for the final payment to be made upon the completion of the building, it seems to result that laborers and materialmen are

entitled to take it for granted that the final payment will not be made until the building is completed, notwithstanding an architect may prematurely certify it to be completed. But the present case does not require us to decide this point, and we may assume, in favor of the plaintiff, that the payment of $1,000 on September 28th was made in advance of the terms of the contract.

It will be observed, therefore, that the stop notices of Zetton and of the Dodge & Bliss Company were served after that advance payment and before the completion of the building, while the stop notice of the plaintiff was served after the completion of the building, although his work was completed in time to enable him to serve his stop notice before the building was completed.

Section 3 of the Mechanics' Lien law (*Pamph. L.* 1898, *p.* 538) provides in substance that when the contractor shall, upon demand, refuse to pay any materialman, journeyman or laborer any money or wages due for materials furnished or labor performed in the erection or construction of the building, it shall be the duty of the journeyman, laborer or materialman to give notice to the owner of such refusal and of the amount so demanded, and the owner shall thereupon be authorized to retain the amount so due and claimed out of the amount owing by him upon the contract, or that may be thereafter become due from him upon the contract, giving notice to the contractor of such demand; and if not paid by the contractor, the owner, on being satisfied of the correctness of the demand, shall pay it, and the receipt of the journeyman, laborer or materialman shall entitle the owner to an allowance therefor in the settlement of accounts between him and the contractor.

Section 5 provides that if the owner shall, for the purpose of avoiding the provisions of the act, or in advance of the terms of the contract, pay any money or other valuable thing upon the contract, and the amount still due to the contractor, after such payment has been made, shall be insufficient to satisfy the notices served in conformity with the provisions of

the act, the owner shall be liable in the same manner as if no such payment had been made.

The present section 3 is not much different from the third section of the Mechanics' Lien law of 1853, as amended in 1863. *Pamph. L.* 1853, *p.* 437; *Id.* 1863, *p.* 275, § 2.

In *Craig* v. *Smith,* 8 *Vroom* 549, it was held by the Court of Errors and Appeals that under the third section of the act of 1853, as thus amended, in order to entitle the workman or materialman to an action against the owner there must be a debt due from the owner to the contractor at the time the notice was given; and if before that time the debt had been legally assigned, so that the contractor had no control over it, or right of action for it, a notice given to the owner by the workman or materialman would create no obligation under the statute as against the owner. This was upon the ground that under the statute law as then existing there was no lien upon the moneys due from the owner to the contractor, in favor of the contractor's creditor, until service of the notice.

Under section 3 of the revised act of 1874 (*Rev.* 1877, *p.* 668), the terms of which were substantially the same as the enactment that was under consideration in *Craig* v. *Smith,* *supra,* the Court of Errors and Appeals held, in the case of *Mayer* v. *Mutchler,* 21 *Vroom* 162, that a stop notice would operate upon moneys thereafter to fall due from the owner to the contractor, as well as upon moneys due at the time of the service of the notice. The construction thus adopted was embodied in express terms in the supplement of 1895 (*Pamph. L., p.* 313) and in section 3 of the revision of 1898.

But prior to the enactment in 1895 of the prohibition upon advance payments, &c., now contained in section 5 of the new act, there was nothing to prevent the contractor from assigning or otherwise disposing of moneys due or to fall due to him under the contract, unless and until they were impounded by a notice to the owner under section 3. In short, by the construction uniformly adopted by all our courts, a stop notice under section 3 has no retroactive effect, but operates from the time such notice is given to create a liability at law upon the owner to the extent of moneys then due or thereafter coming

due from him to the contractor, and constitutes in equity an assignment, *pro tanto,* from the contractor to the claimant of the moneys then due or thereafter coming due from the owner to the contractor. *Wightman* v. *Brenner,* 11 *C. E. Gr.* 489.

But the prohibition contained in section 5 of the act and which was first enacted in the supplement of 1895, while it does not enlarge the liability of the owner under a stop notice, does prohibit the owner from impairing that liability by any payment made to the contractor for the purpose of avoiding the liability, or by any payment made in advance of the terms of the contract. The provisions of the supplement of 1895 in this behalf, which are identical, except for verbal alterations, with the provisions of section 5 of the act of 1898, have been repeatedly expounded by the Court of Errors and Appeals. *Slingerland* v. *Binns,* 11 *Dick. Ch. Rep.* 413; *Person* v. *Herring,* 34 *Vroom* 599; *Bayonne Building Association* v. *Williams,* 14 *Dick. Ch. Rep.* 617; *Smith* v. *Dodge & Bliss Co.,* 14 *Id.* 584.

The construction set forth in the opinion of Mr. Justice Dixon in *Slingerland* v. *Binns, supra,* has since been uniformly approved and followed. Speaking of what is now section 5, he says: "In substance it directs that the owner shall not in any way discharge his liability to pay under the contract until, according to the terms of the contract, the time to do so has arrived, in order that until that time such liability may be preserved for the benefit of workmen and materialmen who serve the statutory notice. This enactment, we think, affords a reasonably clear indication of a legislative purpose to give to persons entitled to serve the statutory notice an inchoate lien upon the liability of the owner under the contract until that liability matures, according to the terms of the contract; such lien to become perfect on service of the notice before the liability matures, but to expire on such maturity if no notice has been given, for a notice served after maturity derives no aid from this provision."

In *Bayonne Building Association* v. *Williams, supra,* Mr. Justice Collins said: "As the respondent Conklin served no notice before the final payment fell due under the contract,

his lien expired, and he must stand simply as the holder of an order, and subject to all claims under duly-served notices and under orders presented before his own."

In that case and in *Smith* v. *Dodge & Bliss Co., supra,* it was settled that notwithstanding the provisions of section 5, stop notices are still to be paid in the order of priority in which they are served, and not *pro rata.*

See also the following decisions in the Court of Chancery: *Booth* v. *Kiefer,* 15 *Dick. Ch. Rep.* 57; *Donnelly* v. *Johnes,* 13 *Id.* 442; *Flaherty* v. *Atlantic Lumber Co., Id.* 467. The result of these decisions is that when the final payment matures and becomes due it must be applied first to satisfy the stop notices previously served in the order of their priority, and any money then remaining is at the disposal of the contractor, who is entitled to collect and receive the same from the owner. Any stop notice thereafter served operates only upon the moneys due at the time of such service, so far as not assigned by the contractor or detained by previous stop notices.

In *Blauvelt* v. *Fuller,* 37 *Vroom* 46, where the stop notice was served after the completion of the building and maturity of the final payment, and after a final settlement of accounts had been made between owner and contractor, as a part of which settlement $500 was retained in the owner's hands to meet an order for that amount given by the contractor to a third party about two months before completion of the building, and it appearing that the $500 remained in the owner's hands, unpaid to the assignee, at the time of the service of the stop notice, this court held that the plaintiffs, under their stop notice, took the place of the contractor, but acquired no higher rights than he had; that their action could not be sustained so far as the $500 fund was concerned, but they were entitled to judgment to the extent of the other moneys remaining due from the owner upon the contract, over and above the $500. It is plain that there exists no distinction in principle between that case and the one now before us.

Upon the whole, it seems well settled that while a claimant who serves his stop notice after the owner's liability to the contractor has matured still has the benefit of his notice, so far as it entitles him to stand in the shoes of the contractor and recover from the owner any moneys then due from the owner to the contractor to the extent of the claimant's demand; yet such a belated stop notice has no retroactive effect and does not entitle the claimant to any benefit of the provisions of section 5 of the act. His rights are subject to all payments previously made by the owner to the contractor, all stop notices previously served and other prior assignments, without regard to the time when or the order in which such prior payments or assignments were made or stop notices were served.

Under this view of the law the plaintiff in the present action cannot succeed. Granting that Zetton and the Dodge & Bliss Company, respectively, both of whom served their stop notices prior to the maturity of the final payment, are entitled to enforce their claims against the owner irrespective of any advance payment made by him, yet the present plaintiff is not entitled to be subrogated to their rights. The gross amount of the payment made on September 28th, added to the amounts of their stop notices, is more than the amount of the final payment due to the contractor. So far as Taylor's rights are concerned it is immaterial whether the payment made to the contractor preceded or followed the service of the prior stop notice or whether it preceded or followed the maturity of the final payment under the building contract.

The judgment below should be reversed, and final judgment be entered in this court in favor of the defendant, with costs. *Smith* v. *Ocean Castle,* 30 *Vroom* 198; *Lehigh Valley Railroad Co.* v. *McFarland,* 15 *Id.* 674.