JANE VEITCH

*v.*

JAMES CLARK, JOHN BOVE AND FREDERICK BRANDT, partners, &c., et al.

[Filed July 9th, 1904.]

A building contract provided for payment of the contractor in four installments, the third "when the trim is on and the doors hung." The architect gave his certificate and the third payment was made, in good faith, before all the doors and trim were on, the work necessary to put them on being worth $70; but other work, worth $250, not necessary to be done before that payment was due, had been done. The architect, however, testified that in practice those words were not construed strictly, but indicated a certain stage of the work; that such stage had been reached, and that the doors and trim then off were ordinarily kept off till the last of the work, so as not to interfere with other work and to prevent their being marred.—*Held*, that there was no advance payment, within Mechanics' Lien law (*P. L. of 1898 p. 539 § 5*), providing that if the owner of a building liable to mechanics' liens shall, in advance of the terms of a building contract, make a payment thereon, and the amount thereafter due thereon is insufficient to satisfy notices served according to the act, he shall be liable as though such payment had not been made.

On final hearing on bill, answer and proofs.

*Messrs. McEwan & McEwan,* for the complainant.

*Mr. William Hackett,* for J. Gahagan's Sons, defendants.

*Mr. Augustus A. Rich,* for other defendants.

PITNEY, V. C. (orally).

In this case Mrs. Veitch, having a contract to build a house, entered into between her and a Mr. Clark, a builder, has paid into court a sum of money, about $128, which she says is all that she owes Mr. Clark, and for which there are several claimants.

It is a bill of interpleader. There is no dispute between the claimants. The dispute is between them and Mrs. Veitch as to the amount which she ought to pay into court.

Her bill was filed for the purpose of being relieved and also to enjoin certain actions at law brought against her under the stop notices which were served by the three defendants, who are here acting in concert to defeat her claim.

The only question presented is as to whether she was justified in making the third payment under the contract of $1,000. The contract provided for four payments. Three of them were made in strict accordance with the certificate of the architect. Shortly after the making of the third payment ($1,000) the contractor threw up his hands and abandoned the job, and Mrs. Veitch, acting under a provision in the contract, finished the building at an expense of some six or seven hundred dollars, leaving in her hands, according to her account, the sum of money which she has paid into court.

The last payment provided for is $850, and it is out of that payment which she finished the building at an expense of between $600 and $700.

The contention of the defendants is that at the time the third payment of $1,000 was made it was not due under the terms of the contract, and hence that it was an *"advance payment,"* and

that under the fifth section of the Mechanics' Lien law she is liable to pay whatever is due these three persons who have made claims. Their claims exceed the amount of $128, which she paid into court, by $100 or $200. How much is it?

Mr. McEwen—By $1,000.

Mr. Rich—We only claim she is liable for a thousand, which we claim she prematurely paid, and the balance of the fourth payment.

The Court—They claim that the $1,000 payment, known as the third payment, was nugatory and that she must pay it over again so far as was necessary to pay their claims, and they claim under the fifth section.

Now, it requires no argumentation to show that the statute in question may be penal in its effect. The payment may have been made in perfectly good faith. If the law requires her to pay it over again, it has a penal effect, for anything that makes a person pay money which he does not owe is in its nature penal. That leads one to be careful how he applies the terms of that fifth section.

"5. If the owner or owners of any building or other property which by this act is made the subject of liens for or toward the construction, altering, repair or improvement of which labor or services have been performed or materials furnished by contract, duly filed, shall, for the purpose of avoiding the provisions of this act, or in advance of the terms of such contract, pay any money or other valuable thing on such contract, and the amount still due to the contractor, after such payment has been made, shall be insufficient to satisfy the notices served in conformity with the provisions of this act, such owner or owners shall be liable in the same manner as if no such payment had been made."

It is what is called the advance payment section. And the question is whether Mrs. Veitch has made a payment in advance of the terms of such contract. If she has, and made it in good faith, and has not paid Mr. Clark any more money than he has earned for her, and has to pay it over again, that is penal, in my judgment. And hence the court, in considering this statute, ought to be careful how they carry it to a point where its application will be penal. It was carried to that point in the case of *Smith* v. *Dodge-Bliss Company, 59 N. J. Eq. (14 Dick.)*

*584,* and it was carried there because Mrs. Smith had gone security for one of the contractors to the materialmen, Burns & Company—when you come to look at that, it takes the edge ·off of the penal aspect of the thing.

In the case of *Binns* v. *Slingerland, 56 N. J. Eq. (11 Dick.) 413,* the party had accepted a draft in advance, which was in effect also going security for the contractor, and, while a very respectable minority, and I am not sure it was not a majority ·of the law judges of the court of appeals, agreed with my view below, the majority took the other view.

Now let us see, in the first place, whether Mrs. Veitch paid .any money that had not been honestly earned by Mr. Clark.

It may be admitted that the precise terms of the contract, to the ordinary reader, had not been complied with. Those terms are: "When trim is on and doors hung." Evidently a provision which must have a liberal construction, because it would be quite impossible, without using a great deal of language for which no provision is made in the blanks in these contracts, to ·describe precisely by language which is not open to any room for construction or implication, just what the condition must be. But the language is general, and it is brief. "When the trim is on and the doors hung." Now, that means, in strict language, when *all* the trim is on and *all* the doors are hung. So far the contention of the defendants is right.

But against that comes the undisputed evidence of the architect, who has favored me with his evidence in this case, and I must say that it is very clear and frank and satisfactory, that in practice those words are not construed strictly; they indicate a certain stage of the work; they indicate the fact that the builder has got to a· certain point; he has earned a certain proportion of the whole job; and a payment made under the cir- ·cumstances intended to be described by that language is not payment to him before he has earned his money. He has put that much money's worth in the job; that is what the architect says. He says that it is practically impossible; that it would increase the cost unreasonably to hold that in every case the precise terms of the contract should be complied with; that

different persons are working at the same time on the building always, and that is common knowledge. The work is classified and divided among different sub-contractors or sub-superin-tendents, whatever you choose to call them. There is a mason; there is a carpenter; there is a painter; there is a plumber; all usually have to be working together and interlacing and interlocking with each other. And it is apparently impossible in practice to carry forward the work in the precise order in which a contract may classify it. Circumstances may intervene to compel—make it convenient for the contractor to do some work that is not called for for the purpose of payments before that time has arrived, and it may be very convenient for him, and in the advance of his work, to leave out some little matter. Therefore, the architect says it is not the intention of this language to state precisely the point to which the work has advanced. It is a matter of substance, and not of technical language. That is what the architect says, I think, although perhaps he expressed it better than I have now.

He says that he did certify, on the 19th of September, to Mr. Clark, that he was entitled to the sum of $1,000, being the amount of third payment due, as per contract. He says all the doors were not then hung, nor all of the trim on, but he says that a certain part of it was left off which is usual to be left off. The particular parts were the front and rear doors, through which material is to be carried, and that if the doors were on they are in the way—they are liable to be scratched—and par-ticularly with regard to the trim in the vestibule, and the tiling, if there is any. It is always left until the very last.

And he says there were, besides, one or two little doors, of trifling value, which could not be made at that time because the precise size of the casing to hold those doors could not be deter-mined at that moment in time to keep up with the rest of the work. They were what are called odd doors, I think. Then he says there may have been a door left off in the bathroom, in order to get the bathtub in, and a variety of those things which are a mere matter of accommodation for the progress of the work.

He estimates that the amount of that work that was not done was something much less than $70.

Now, he says that the contractor at that time had done $250 worth of work, at least, more than was required in order to entitle him to his third payment. Now, there is no dispute about this.

Now, he says further, that the amount of variation of which I have spoken is usual—that it is usual to leave the doors off of the front and rear hall and bathroom, and leave off some trim where the plumbers' work is to come in. It is the usual thing that would deceive nobody who is accustomed to being around buildings in course of construction. It would not deceive one of these gentlemen who were entitled to serve notices—the stair-maker, for instance, and the others. They could not be deceived about it, because they would see that was the usual thing to do, and common thing to do.

Now, then, I come to two conclusions—*first*, that this gentleman (Mr. Clark) had earned his money, and I hold there was no advance payment—there was no intentional advance payment, there was no conscious advance payment. He had earned that much, and if Mrs. Veitch had said to Mr. Clark, or her agent, the architect, had said, "Now, Clark, do not put on this; do not hang this front door; do not hang the vestibule door; do not hang the rear door; do not hang the bathroom door, because you know they will get scratched up; in place of that, go on and do this other work," and by a little contract between them, not to remit anything to Mr. Clark, but to substitute a little work for present convenience, and Mr. Clark had sued Mrs. Veitch for the third payment, there is no doubt he could recover according to law.

But it is said by the counsel that it is not the law. Here is the strict letter of the law—that the payment must be due by the terms of the contract, because the other materialmen and laborers are entitled to go and look at that contract on file, and the specifications on file, and determine just when the thing is due; and if they go in the building and see that it is not due,

they are justified in holding off their notices. I believe I am putting Mr. Rich's argument as strong as it can be put?

Mr. Rich—Yes, sir.

The Court—And the answer to that, I think, is twofold—*first,* what Mr. Dixon says is the custom of the trade, known to everybody; and *second,* that these gentlemen, who are accustomed to going around buildings and seeing how things are getting along and watching the time to put in their notices, could not have been deceived by it, if Mr. Dixon's evidence is reliable, and I think it is decidedly reliable.

Then, in considering this, I must bear in mind, as I said before, that to make this lady pay it over again when she has paid it once in good faith, and when Mr. Clark was entitled to it, in justice and equity as between them—to make her do that over again to these people is highly penal. I cannot take any other view of it.

Now, I think that is all the case. I think I have met every point made with great ability and proper industry by my friend, Mr. Rich, and I think the law is against him. I think it would be a reproach to the administration of justice if the law were otherwise. I think the merit of the case, in every aspect, is all with the complainant. No dispute, no complaint, is made of the cost of finishing this—that there was any looseness on the part of Mr. Dixon. He had but $850 to do with to start out, and he did it as cheap as he could. He cut it down to $677, I believe, and as far as he did, he did it to the best advantage. The lady acted in perfect good faith, the architect acted in good faith; there isn't the least reason to believe that he was "laying in," so to speak, with Mr. Clark, to enable him to cheat these people. There is not a particle or glimpse of fraud in the case or of underhanded work, or tickling, as you might say. There isn't anything to lead us to believe that Mr. Dixon did not act in perfectly good faith in giving that certificate. He says he went there to the house and saw it—made a careful inspection—and in his judgment, according to his interpretation as an architect—in his own language, "according to this contract"—the man was

entitled to his $1,000, and what was left out undone was not only what was usually left out undone for the purpose of practically finishing the building without injury to the parts as they went in together, but because he had done $250 worth of work that he need not yet have done.

Now, Mrs. Veitch acted by her architect. She signed the certificate after her architect signed it—no, she did not, in this case, either; she did the other—yes, she did sign it on the back, because her architect said so. Of course, I do not suppose Mr. Dixon thought he was swearing with a rope around his neck, but if he had misled Mrs. Veitch into endorsing a certificate to be paid by her mortgagee when he ought not to, I don't know where he stands. I don't suppose he thought of it himself; I don't believe he did; but it only shows what traps are laid by a very strict construction of a statute of that kind—a construction that I am unwilling to give it when the parties have acted in perfect good faith. The man that got the money had earned every bit of it—and more, too—and nothing was there on the ground to mislead any one of these materialmen and dealers, who are dealing with these plans and specifications and contracts all the time.

I therefore pronounce in favor of the complainant, and that she is entitled to be discharged, this money having been paid into court. And I suppose, too, I must hold she is entitled to take her costs out, and, if Mr. McEwan asks it, a small counsel fee— $25 counsel fee.