HENRY M. POST, APPELLANT, v. SAMUEL GELDZILER ET AL., RESPONDENTS.

Argued October 22, 1928—Decided February 4, 1929.

For the appellant, *John O. Totten, Jr.*

For the respondents, *Frederick W. Van Blarcom.*

The opinion of the court was delivered by

PARKER, J. This is a suit by a materialman against owner, upon a stop-notice served pursuant to sections 3 and 5 of the Mechanics' Lien act (*Comp. Stat., p.* 3290, *et seq.*), especially the latter; the theory of the suit being that the owner had paid moneys to the contractor in advance of the terms of the contract, and that such moneys were subjected by the statute to the plaintiff's stop-notice. The trial was had before Judge Porter, sitting without jury, and he decided that there were no moneys in the owner's hands or which should be in his hands, applicable to the stop-notice, and accordingly gave judgment for the defendant.

The evidence showed, and the court found as a fact, that the contractor never completed the work but had abandoned it. The case does not show that the owner took over the work and completed it, or relet a contract for completion; nor does it show that the owner accepted it so as to be liable for an unpaid balance of the contract price less proper deductions for cost of completion. Mere occupation of the building does not imply such acceptance. *Bozarth* v. *Dudley,* 44 *N. J. L.* 304. So we have the case of an incomplete building, and an owner with a fund actually or, by virtue of section 5, constructively in hand, but normally entitled to use that fund in the first instance to pay for completion, prior to any stop-notices. *St. Peter's Church* v. *Vannote,* 66 *N. J. Eq.* 78. *Non constat* but that such completion would exhaust not only any moneys remaining in hand but also any moneys which for the sake of argument may be conceded as having been paid in advance of the terms of the contract. It is for the stop-notice claimant to show either contract completion or substantial completion, or acceptance, or fraudulent refusal to complete,

perhaps, and money actually or constructively available for the satisfaction of his claim, before he can recover. No such situation is exhibited in this case.

There is another difficulty. The contract price and certified extras amounted to $53,107, and the owner had paid out on certificates of the architect $51,091.74, leaving an actual unexpended balance of $2,015.26. Plaintiff claims that as the contract called for a retention on each payment of fifteen per cent. of the amount earned, there should be in hand, even at completion, fifteen per cent. of the contract price and extras, or $7,966.05. If the contract called for payments on the basis of percentage of completion, this would be true, but it says not one word about percentage of completion. The clause reads thus:

"Payments to be made from time to time as the work progresses in amounts to be certified to by a written certificate of the architect. No payments to be made for more than eighty-five [85%] per cent. of the work completed, materials furnished and actually installed in the building. The eighty-five [85%] per cent. valuation and the certificate of the architect, in all cases, to be final, binding and conclusive between owner, contractor and all parties concerned, and no work to be considered finally accepted until the issuance of the final certificate."

It is plain that if the contractor agrees to a lump sum on a losing basis, he may still, under this clause, legitimately obtain certificates for eighty-five per cent. of fair cost of work done and materials furnished, and exhaust the contract price before the work is completed. Judging from his abandonment before completion, this is probably what happened. The point came up in the course of the trial, and the testimony of the architect and his assistant was that under such a clause the customary practice was to allow "cost of the work" less fifteen per cent. This seems to be the natural meaning of the clause, and the fact that by so applying it, an owner may be left high and dry with an incomplete building and an irresponsible contractor is not a sufficient argument for giving the clause a meaning that does not naturally attach to it.

So construing this contract, it follows that the claim of a constructive fund of $7,966.05 is unfounded, that the correct balance was $2,015.26 as found by the trial court, and that being exhausted by a prior stop-notice there was nothing left for the plaintiff.

For these reasons the judgment will be affirmed.

WHITE, J. (dissenting). The building contract fixed a lump sum as the contract price, payments to be made from time to time as the work progressed, on certificates of the architect, as to which certificates it is provided, "no payments to be made for more than eighty-five per cent. of the work completed, materials furnished and actually installed in the building."

I think the eighty-five per cent. so specified refers, exactly as it says, to the amount or proportion of the completed work done which is to be paid for, and has nothing to do with the rate or price at which the payment shall be made. That rate or price obviously is fixed by the agreed contract price for the entire job. If the work is half completed the contractor is entitled to be paid for eighty-five per cent. of the completed half, that is, eighty-five per cent. of one-half the contract price for the whole job. If there had been no eighty-five per cent. provision and the contract had simply provided for payments from time to time as the work progressed on certificates of the architect of the amount of work done, clearly upon an architect's certificate that half the entire job was completed, the contractor would have been entitled to payment of exactly one-half such entire contract price. The only effect of the eighty-five per cent. clause is to limit the portion of the work which shall be paid for to that percentage of the work done. The rate at which it shall be paid for is, of course, the rate at which the contract provides that the entire work and consequently every part of it shall be done.

If there shall be read into the contract the provision (which I think it clearly does not contain) that the portions of completed work certified to by the architect as the job progresses shall be paid for at a different price (viz., as its

then current value) than that fixed by the contract, it might easily happen that the owner might be compelled to pay out to the contractor on architects' certificates the entire contract price for the whole job before it was three-quarters finished, or twenty-five per cent. more than the entire contract price by the time the job was entirely completed. This, of course, is absurd, and a construction which would lead to such a result should, I think, be avoided, even if the language used were ambiguous, which, in this case, I think it is not. The language seems to me to say exactly what it clearly was intended to say, viz., that the stipulated contract price for the entire job should be paid as the work progresses to the extent of eighty-five per cent. of the amount performed from time to time as fixed by the certificates of the architect.

I also disagree with the prevailing opinion upon the other point involved. The fact that the owner has the right to step in where a contractor falls down and use the remainder of the contract money to finish the job does not, in my judgment, give the owner under such circumstances the right to retain the unexpended portion of the contract price without completing the job (or showing that the remaining funds are insufficient to complete it), and at the same time deny payment out of such fund to the materialmen who had supplied materials upon the faith of the entire contract price being available for their protection. If it appeared that there had been no anticipation of payments and that nevertheless there remained insufficient funds to complete, a different situation might arise, but there is no such proof here.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, KALISCH, BLACK, CAMPBELL, LLOYD, HETFIELD, DEAR, JJ.   10.

*For reversal*—WHITE, VAN BUSKIRK, JJ.   2.