26 N.J. Super. 285 (1953)
97 A.2d 720
JAMES FALCONE PLUMBING & HEATING CO., INC., AND JAMES FALCONE, PLAINTIFFS-APPELLANTS,
v.
JOSEPHINE PASQUALE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 3, 1953.
Decided June 15, 1953.
*287 Before Judges FREUND, STANTON and FRANCIS.
Mr. Murray Greiman argued the cause for plaintiffs-appellants.
Mr. Irving Sachs argued the cause for defendant-respondent (Mr. John J. Pagano, attorney).
The opinion of the court was delivered by FRANCIS, J.C.C. (temporarily assigned).
Respondent and one Alexander Ulesky, trading as Cedar Construction Company, entered into a written contract for the construction of a home on property owned by her at 170 West 24th Street, Bayonne, New Jersey. The contract was duly recorded in the office of the County Clerk of Hudson County. Appellant, a subcontractor, thereafter filed with the county clerk and served upon the respondent a stop notice in accordance with N.J.S. 2A:44-77, 78. Subsequently this action was brought *288 to enforce payment of the obligation described in the stop notice out of monies allegedly due under the building contract and still in the hands of respondent as owner. At the close of the trial respondent's motion for judgment was granted and this appeal followed.
The record discloses that on May 21, 1951 the written contract referred to was executed. Two days later it was filed with the county clerk. The total sum agreed to be paid thereunder to the contractor for the construction was $17,200. This amount was to be paid according to a specific schedule set out therein.
During the course of the work materials were delivered to the job for use by the general contractor and subcontractors in advance of the need for them, the construction not being sufficiently advanced to permit of their immediate use. Apparently Ulesky was not able to pay for them at the particular times, and in order to keep the work going the owner, on certificates of the architect, made certain payments to materialmen and to the contractor which were not in accordance with the schedule outlined in the written contract.
There is nothing in the record to indicate that this course of conduct was not pursued by the owner in entire good faith. Appellant himself was a beneficiary of the largesse. The outline of his claim, which is attached to the complaint, shows that Mrs. Pasquale "paid on behalf of plaintiff to the Standard Heating and Plumbing Supply Co. on November 21, 1951" the sum of $1,140 for which a credit was given.
However, even this deviation from the schedule of payments did not save the contractor and on February 15, 1952 he abandoned the project, leaving the building incomplete.
At the time of abandonment respondent had already paid out $14,683.06, leaving a balance of $2,516.94 to be disbursed if the work had been completed. The last payments to or on behalf of Ulesky were made on November 23, 1951, one in the amount of $843.06, and the other for $1,140. The latter is the one made on behalf of appellant, although he gives the date incorrectly as November 21, 1951.
*289 As already indicated, appellant held a subcontract for part of the work. On September 4, 1951 he and Ulesky executed a written contract under which for $3,395 he agreed to do certain plumbing work and to supply certain materials and fixtures in connection therewith. This task was partially finished when Ulesky withdrew from the premises.
On February 19, 1952 Falcone filed a stop notice in the county clerk's office and served a copy thereof on respondent. This notice presented a claim in the amount of $1,495 "for the materials furnished by me * * * and used * * * in the erecting and constructing of the one family brick veneer and frame two story building etc." It is noted that the quoted statement is not entirely accurate because the claim is for labor as well as for materials.
It was stipulated at the trial that the unpaid balance on the principal contract was $2,516.94 and that it cost respondent "at least $3703.50 to complete the building."
The general rule is that where there is an unpaid balance under a construction contract the claim of an owner who expends money to complete the structure following default of the contractor, is superior to that of stop notice claimants. Post v. Geldziler, 105 N.J.L. 370 (E. & A. 1929); Brown v. Home Development Co., 129 N.J. Eq. 172 (Ch. 1941). This doctrine formed the basis of the action of the trial court in granting the motion for judgment in favor of respondent. He said:
"It is the court's view of the law, and it is the principle of law to which the court will adhere in disposing of the motion, that in a situation of this sort, with respect to monies held in the hand of the owner at the time of the filing of the stop notice, more especially where, as here, such monies are insufficient to complete the building, the prior right is in the owner to bring about completion and to expend the monies that she has to that end."
The view that the unexpended balance measured against the cost of completion exonerated the owner because the latter exceeded the former did not give the necessary consideration to appellant's claim of illegal advance payments *290 to the contractor. The record made by appellant is somewhat confused on this subject but analysis reveals enough proof, as hereinafter set forth, to demonstrate that at least one payment constituted an advance payment under N.J.S. 2A:44-85, and consequently required a different disposition of the motion for judgment.
While appellant conceded that it cost more to complete Ulesky's contract than the unexpended balance, he claimed that by virtue of advance payments made in disregard of the contract schedule, the owner was chargeable with additional monies more than sufficient in amount to satisfy his claim.
The statute (N.J.S. 2A:44-85) provides:
"If the owner of any building or other property which, by the provisions of this article, is made the subject of liens for or toward the erection, construction, completion, alteration, repair or addition thereto for which labor has been performed or materials furnished by contract, duly filed, * * * shall, for the purpose of avoiding the provisions of this article or in advance of the terms of such contract, pay any money or other valuable thing on such contract, and the amount still due to the contractor, after such payment has been made, shall be insufficient to satisfy the notices filed pursuant to section 2A:44-77 of this title, such owner shall be liable in the same manner as if no such payment had been made."
When a construction contract is filed section 75 (N.J.S. 2A:44-75) of the Mechanics' Lien Law imposes a lien for materialmen and laborers on any funds in the hands of the owner representing monies due or to grow due to the contractor. This lien is in substitution for the ordinary lien for such persons, which, under section 66, would attach to the realty involved.
Once the contract is filed it becomes the chart by which all subsidiary parties in interest adjust their obligations and shape their course. Builders' Material Supply Co. v. Schoen, 86 N.J.L. 290 (E. & A. 1914). Materialmen and laborers become entitled to assume that no installment will be paid to the contractor until it becomes due and payable under the terms of the contract. Somers Lumber Co. v. Kaufman, 102 N.J.L. 601 (E. & A. 1926); Stevens v. Robinson, 94 *291 N.J. Eq. 30 (Ch. 1922). The lien on the funds in the owner's hands
"is a vested right under the statute, and as such is secure as against the act of the owner. The statute is an assurance to materialmen and workmen that they may rely upon the terms of the contract as filed, and that there shall be no advance payment, and no secret arrangement between the contractor and owner not authorized by the terms of the contract, by which any payment of money required thereby shall be withdrawn from the operation of a stop order before such payment matures." Smith v. Dodge & Bliss Co., 59 N.J. Eq. 584 (E. & A. 1899).
The source case for much of the precedent in this field is Slingerland v. Binns, 56 N.J. Eq. 413 (E. & A. 1898). There the Court of Errors and Appeals said:
"It [the statute] expressly forbids the owner to pay any money in advance of the terms of the contract, if the effect may be that the amount unpaid will prove insufficient to satisfy notices served in conformity with the statute. The prohibition is not confined to payments made to the contractor personally; it embraces payments made to anyone. In substance it directs that the owner shall not in any way discharge his liability to pay under the contract, until, according to the terms of the contract, the time to do so has arrived, in order that until that time such liability may be preserved for the benefit of workmen and materialmen who serve the statutory notice."
While the courts ought to be careful in the application of the statute because it may seem penal in a given case where an owner acts in good faith, Veitch v. Clark, 67 N.J. Eq. 57 (Ch. 1904), there is no escape from the legislative intendment that advance payments to the contractor or to materialmen of the contractor shall be made at his peril. Glasser & Co. v. Muencks, 99 N.J. Eq. 42 (Ch. 1926).
Thus it is apparent that if an owner disregards the time schedule set out in the filed contract and makes payments in advance, generally such payments cannot be charged against the fund available for satisfaction of stop notice claims. In our judgment also, the owner has no right to fraction the scheduled payments and pay a portion of an installment predicated on the completion of a part of a particular *292 phase of the work. The schedule, as contracted for, is a material part of the contract and may be relied upon implicitly by workmen and materialmen. As Chief Justice Gummere said in Coles & Son Co. v. Lothridge, 81 N.J.L. 406 (E. & A. 1911):
"The change in the time of payment was also material; for it affected seriously the right given by section 3 of the statute to laborers and materialmen to impound moneys due and owing by the owner to the contractor on the contract, or that might thereafter become due thereon, as a means of obtaining payment for work done upon or materials furnished to the building."
However, as a just and practical corollary, it must be declared that if, after such payments and before the filing of the stop notice, the contractor completes, or substantially completes (de minimis non curat lex), the work necessary to justify and require that payment, the owner's liability will be reduced to the extent thereof. This, we believe, is the effect of Veitch v. Clark, 67 N.J. Eq. 57 (Ch. 1904); Taylor v. Reed, 68 N.J.L. 178 (Sup. Ct. 1902), and Passaic-Bergen Lumber Co. v. Peterson, 105 N.J.L. 537 (Sup. Ct. 1929). But the doing of other work not within the particular phase of construction, completion of which would call for the particular payment, would not accomplish that result. Passaic-Bergen Lumber Co. v. Peterson, supra.
Without setting out a detailed comparison between the contract schedule of payments and the nine payments actually made by the owner, it is plain that no attempt was made to adhere to the schedule. The architect said, however, that while the deviation occurred he issued certificates only for completed work, and that when abandonment occurred there was no money due the contractor for such work.
Some of the payments claimed to constitute advance payments were apparently earned by the contractor before abandonment. For example, the architect admitted that payments numbered 7 and 8 in the schedule, covering the amount due upon completion of the laying of the floor and the trim and hanging of the doors, were made before that work was done. *293 However, in the statement of the builder as to the unfinished work on his departure, these items are not included. Thus it appears that he had done the work and earned the payments before February 15, 1951, the date of abandonment, and prior to February 19, 1952, the date of filing of the stop notice. Consequently, under Passaic-Bergen Lumber Co. v. Peterson, supra, these disbursements cannot be considered advance payments. The same is true of a $700 payment for plastering and electrical work, of which the appellant complains in his brief.
Nevertheless, one advance payment is clear. The fourth installment of $3,300 was called for on completion of the brick veneer and fence wall. Here the architect, without waiting for the wall to be completed, paid Ulesky $2,500 and withheld $800 pending its completion. The testimony discloses that this wall was never completed. There being no right in the owner to fraction the payments, the $2,500 must be treated as a violation of the statute and therefore part of the fund in the hands of Mrs. Pasquale when the stop notice was filed. So, instead of $2,516.94 in her possession, by operation of the statute she must be deemed to hold $2,500 additional, or $5,016.94. Since her prior lien for the cost of completion, i.e., $3,703.50, would reduce this to $1,313.44, that sum is available to meet whatever amount is found to be due on appellant's stop notice claim. Under these circumstances the trial court should not have granted respondent's motion for judgment, but should have declared as a matter of law that at least the sum of $1,313.44 was available in satisfaction of the claim.
In view of the ambiguous state of the record we do not decide that there were no other advance payments in violation of the statute. Since the action will have to be retried, the entire matter will be open for re-examination at the trial in the light of the legal principles herein expressed.
Nor do we hold that appellant is entitled on this record to a judgment as a matter of law for the amount of the claim set forth in the stop notice, that is, $1,495, or for $1,313.44, if that sum turns out to be the full amount in respondent's *294 hands to be applied toward the alleged debt of $1,495. Appellant's claim is in dispute. The contractor denied that such amount was due; he said the work was not completed and asserted further that even the completed portion was not done properly. Here it is noted that Falcone said that the actual work done by him was finished as of January 2, 1952 and that the contractor did not abandon the project until February 15, 1952. Why no work was done between these two dates is not explained.
Further, in Exhibit A attached to the complaint Falcone recites credits of $60 for unfurnished labor and $366.30 for the cost of materials not installed as provided by his subcontract. In his testimony he said that at the time of the filing of the stop notice there was actually due him $1,073. This figure came about by deducting credits of $420 (sic) from the $1,495 unpaid balance under his subcontract. Then he asserted that he was suing for the full $1,495 because he had the men available to finish the job and had purchased the materials "which were hard items to dispose of" and would "probably lay" in his shop "quite a while" before he could dispose of them.
All of these facts demonstrate that a jury question was presented as to what, if any, sum was due to appellant under his stop notice.
One further jury issue appears. Respondent contends that the stop notice is void because the amount due and owing was misstated therein.
Section 77 of the act (N.J.S. 2A:44-77) requires that a stop notice shall set forth "the amount due and demanded, specifying the amount as nearly as possible." This language is not a mandate to set forth the amount due with absolute accuracy. But as much accuracy as is reasonably possible is required. Where the amount specified is in excess of the actual debt, "the burden rests upon the materialman to show that the excessive claim was not the result of carelessness, and that the mistake had been made notwithstanding the fact that he had used every reasonable effort to ascertain with exactness the amount which he was entitled to impound *295 in the hands of the owner." Tuttle v. Cadwell, 92 N.J.L. 26 (Sup. Ct. 1918).
In applying this rule the Supreme Court held that an unexplained over-demand of $9.50 was fatal to a stop notice. It declared that the duty was on the claimant to explain and to establish that the error was due to honest mistake and not to design or carelessness. Intili v. Bonnet, 6 N.J. Misc. 1043 (Sup. Ct. 1928).
Also in Hasson v. Bruzel, 104 N.J. Eq. 95 (Ch. 1929), the notice was declared invalid because of a substantial difference between the amount claimed to be due and that proved to be due. The substantial difference was $135.75.
Respondent insists that the amount claimed to be due in the stop notice, $1,495, was excessive and known to be so by the appellant. Our study of all of the facts has led us to the conclusion that not only should the jury determine any balance due Falcone, but also whether in specifying in the stop notice the amount claimed to be due he did so "as nearly as possible," as that language has been construed by the cases cited.
Accordingly the judgment is reversed and the action is remanded for a new trial.